**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**GEORGE H. T. DUDLEY, Defendant**

Case No. 678-1971

Municipal Court of the Virgin Islands

Div. of St. Thomas and St. John

October 15, 1971

---

FLEMMING NORCOTT, JR., Assistant Attorney General, *for the plaintiff*

GEORGE H. T. DUDLEY, *pro se*

MICHAEL, *Judge*

215

The defendant is charged with the offenses of parking on a yellow line, which carries a penalty of $5.00, and interfering with an officer discharging his duty under 14 V.I.C. § 1508, which carries a penalty of not more than $500.00 or imprisonment of not more than 1 year, or both. To the first offense the defendant, who appeared pro se, pleaded guilty, but not guilty to the second.

At the hearing the officer testified that the defendant parked his car on a yellow line in front of the Post Office about 3:15 p.m., and although his attention was called to the violation as he was going into the Post Office, he paid no attention to her. She then began writing out a ticket. Upon his return she asked him for his license. He then went into his car, pulled out his wallet and was handing it to her with the license, which she refused to accept, stating to the defendant that he had to take the license out of his wallet and hand it to her. This he refused to do. For this refusal the officer placed the defendant under arrest.

Section 371(b) of Title 20 of the Virgin Islands Code, which the defendant is charged with violating, and for which he was placed under arrest, provides as follows:

"The licensee shall have such license in his immediate possession at all times when operating a motor vehicle and shall display the license upon demand of any peace officer or other person authorized by the Commissioner of Public Safety. It shall be a defense to any charge under this subsection if the person so charged produces in court an operator's license theretofore issued to such person and valid at the time of his arrest."

The testimony of the defendant, compared with the officer's does not differ substantially, except that the defendant claims he was not handing her the wallet, but was displaying the license which was in the wallet, and legible.

The question at issue, therefore, is whether the defendant had the duty of removing his license from his wallet and

delivering it to the officer as she demanded, or the "displaying" of it as he claimed he did was sufficient compliance with the provision of the statute.

As it appeared to the court that the only point at issue was the one mentioned above and, apparently, one of first instance in the Territory, the Government was given an opportunity to show whether the display of the license by the defendant to the officer was sufficient.

In its Brief the Government contends that upon the demand of the officer the defendant had the duty of *delivering* the license to her. It is the officer's testimony that the defendant handed her his wallet with the operator's license, which she refused and demanded only the license. The defendant testified that he did not hand the wallet to her, but opened it and exhibited his license, which the court believes.

The court is in agreement with counsel for the Government as stated in his Brief that there is no statutory or legislative definition of the word "display", but disagrees with him when he states that for the purpose of the section the word "display" means the "manual surrender" of the license into the hands of the demanding officer.

While it might be "common police procedure", as stated by counsel, to demand a manual surrender, the statute, being criminal, must be strictly interpreted. Neither in Black's Law Dictionary, as mentioned by counsel, nor Webster's Unabridged Dictionary is the word "display" defined to mean "manual surrender", or anything to that purport.

In its Brief the Government also cited and discussed certain provisions of the Uniform Vehicle Code and Model Traffic Ordinance, the Manual from which the police of the Virgin Islands have been trained, and also the Laws of Puerto Rico, and urges the court to take cognizance of them, by concluding that "should an exception be made in this case the entire police training method (indeed the

reorganization of the present police force), in regard to the matter at bar would have to be altered."

■ Evidently, the court cannot adopt police procedures as governing in its interpretation of statutory law. And even in the case of Police Regulations which the court may be called upon to interpret, in order to be effective they have to follow certain procedures before they can be enforced. See 3 V.I.C. §§ 912, 913, 931 and 933; Government of the Virgin Islands v. Alfred Bischoff, Mun. Ct. V.I. 1968, 6 V.I. 585.

By the above provisions of the Code, it is obvious that for the court to take cognizance of any procedure followed by the police in determining the guilt or innocence of an accused, such procedure or action must be bottomed on some statute enacted and approved, or some regulation which has become effective in the manner provided by law.

The same is true with respect to the laws of Puerto Rico and the Uniform Vehicle Code and Model Traffic Ordinance; that is, their provisions governing the subject matter must also be found in the laws and regulations of the Virgin Islands. No such law or regulation has been cited by the Government requiring a defendant to *surrender* his license to the demanding officer.

In an annotation found in 6 A.L.R.3d 506, 509, under subsection 3(c), "Meaning of 'produce' or 'exhibit' upon demand", it is stated that "No valid general rule may be formulated to describe the course of conduct required by the statutory direction to 'produce' or 'exhibit' one's operator's license or the vehicle registration certificate, since this determination is dependent upon the *exact* words of the applicable statute and the facts of each case." (Italics supplied.)

On the same page of the annotation it is stated that ". . . it has been held that failure to *exhibit* a valid operator's license or vehicle registration certificate when stopped by

218

a police officer does not constitute a crime, if such documents are produced in court, since the statute created a rebuttable presumption of illegal operation when these instruments were not *shown* to the officer." (Italics supplied.)

In the case of Commonwealth v. Wagner (1941, Pa) 58 Montg Co LR, cited in the same annotation at page 510, we seem to have an interpretation of a statute similar to ours. In that case

" . . . the defendant was charged with the failure to exhibit his operator's license upon demand by a police officer. Evidence disclosed that the defendant had not only exhibited, but had turned over his owner's card to the officer, and that when asked for his operator's card, defendant produced and exhibited it but refused to give it into the possession of the officer. Stating that the act which only required that the operator "exhibit" his license must be strictly construed, the court held that the statute did not require defendant to give the card into the possession of the police officer. Accordingly, judgment finding the defendant not guilty was entered."

This court is in agreement with the holding of the court in the above case, as the court finds that the defendant in the case at bar did not fail to "display the license upon demand of [the] peace officer . . . ."

Having so found, the defendant did not interfere with the officer in the discharge of her duty under 14 V.I.C. § 1508 with which he is charged. A finding of not guilty will be entered.